A. Lee OTTEN, Plaintiff-Appellant,

v.

Ramona Faye OTTEN,
Defendant-Respondent.

No. WD32704.

Missouri Court of Appeals,
Western District.

March 30, 1982.

Robert M. Liston, Sedalia, for plaintiff-appellant.

Stanley B. Cox, Sedalia, for defendant-respondent.

Before SOMERVILLE, C. J., Presiding, and SHANGLER and WASSERSTROM, JJ.

WASSERSTROM, Judge.

This is a suit to specifically enforce an alleged settlement agreement. The trial

court sustained defendant's motion to dismiss, and plaintiff appeals. We affirm.

In 1976, as part of a decree dissolving the marriage between the parties, the wife (defendant here) was granted $200 per month as a single sum for the support of two minor children. On January 13, 1981, the husband (plaintiff here) filed a motion to modify the decree on the ground that one of the children had become emancipated. The next day, January 14, 1981, the wife filed execution for $7,800 which she alleged to be accrued in unpaid child support and ordered garnishment on Third National Bank. The garnishment papers were served upon the bank on January 16, 1981. The bank paid $7,830 into court, and disbursement of that sum to the wife was ordered by the court on February 26, 1981.

On March 2, 1981, the husband filed his petition in the present case. He alleged that the wife had called his attorney on January 21, 1981, offering to settle all questions with respect to back child support for the sum of $4,500 and further offering that the decree of divorce be amended to provide child support on and after February 1, 1981, of only $100. The petition further alleged that the attorney told the wife he would have to consult his client; and that after consultation, the attorney advised the wife that the husband could raise $1,000 in cash immediately and would deliver to her his note for $3,500 in full satisfaction of back child support payments. The petition goes on to allege that the wife then stated that she would accept the proposal and would stop in the attorney's office the following Wednesday to pick up the check for $1,000 and the $3,500 note and that she would at that time sign a stipulation for modification of the decree. The husband alleges that he performed his part of the agreement by executing his check and note and by signing the agreed stipulation.

Paragraph 8 of the petition then proceeds to allege as follows: "Relying to his detriment upon the fact that a compromise agreement had been reached, and the respondent would upon the following Wednesday, her next day off, stop by petitioner's attorney's office and execute Exhibit B and pick up her promissory note and check in full settlement of all back child support payments, borrowed a substantial sum of money in order to meet business obligations incurred by him and relying upon the fact that a compromise agreement had been made satisfying the judgment for all child support payments due respondent through January 31, 1981 caused said loan proceeds to be temporarily deposited in a business account in his name alone at Third National Bank, Sedalia, Missouri." The petition goes on to allege that the wife, in violation of her agreement said to have been orally agreed on January 26, 1981, caused execution and garnishment to be issued on January 14, 1981.[1] The petition concludes with a prayer that the wife be ordered to specifically perform the January 26 agreement by executing the Stipulation and that the court order the clerk of the court to return to the husband the sum of $7,800 paid into court by Third National Bank.

On the same day that the petition was filed, the trial court entered a temporary order for escrow of the $7,830 paid in by Third National Bank. Thereafter the wife filed her motion to dismiss the petition on the ground that it failed to state a cause of action. The court sustained that motion on the grounds that (1) the facts did not show an accord and satisfaction; and (2) there was no valid consideration for the alleged compromise agreement.

The husband's sole point on this appeal is that the court erred in dismissing his petition as an unsatisfied accord "because the contractual obligation alleged in the appellant's petition was a bilateral contract and not a full accord and satisfaction."

## I.

The law is unclear as to whether an accord can be enforced where it is not fol-

---

1. The allegations of the petition in this regard are internally contradictory, for the reason that the wife could not on January 14, 1981, violate an agreement which is not alleged to have been made until 12 days later on January 26, 1981.

lowed by a completed satisfaction. The general texts show a conflict of authority on this point. *Compare* 1 Am.Jur.2d Accord and Satisfaction Section 50, p. 347, n.3, with Section 52, p. 350, nn. 4 & 5 (1962). *See also* 1 C.J.S. Accord and Satisfaction § 38 (1936). One eminent legal writer states that there is strangely little authority upon the matter and the few cases on the point contain reasoning which is not very full or satisfactory. This writer goes on to say that: "As a court of law cannot give adequate relief, and as the promise of temporary forbearance necessarily included in the accord gives equity jurisdiction of the matter, there seems good reason for equity to deal with the whole matter by granting specific performance." 15 Williston on Contracts Section 1845 (3d ed. 1972).

Some Missouri cases contain dicta bearing on this question. See for example *Long v. Weiler*, 395 S.W.2d 234 (Mo.App.1965); *Hall v. Knapp*, 552 S.W.2d 299 (Mo.App.1977). However, no Missouri holding squarely in point has been found. For purposes of this opinion we shall assume, without holding, that an agreement embodied in an accord is a proper subject for specific performance, even though the accord be not followed with a completed satisfaction.

## II.

■ The trial court stated as an alternative ground for its ruling that: "It is clear upon the face of the pleadings there is no valid consideration for the alleged compromise agreement."[2] The wife devotes the bulk of her brief to an argument supporting that conclusion. The husband has omitted giving this court the benefit of his views as to wherein consideration may be found. Nevertheless we shall consider: (a) whether consideration need be shown by the petition; and (b) whether any consideration has been shown or can be reasonably inferred from the allegations made in this petition.

**2.** The reason given by the trial court for that conclusion was that the execution and garnishment had been issued and served upon the bank prior to the date of the alleged agreement. Even though the stated ground may have been

## A.

■ An accord and satisfaction will not be given effect unless founded upon a sufficient consideration. *Curtis v. Indemnity Co. of America*, 327 Mo. 350, 37 S.W.2d 616 (1931); *Collins v. Gaskill*, 359 Mo. 171, 221 S.W.2d 181 (1949); *Alaska Federal Savings & Loan Ass'n v. Hoffman*, 485 S.W.2d 118 (Mo.App.1972); *Hall v. Knapp, supra; Kennedy v. Kennedy*, 575 S.W.2d 833 (Mo.App. 1978). Moreover the party relying upon the alleged contract of settlement is obligated to plead the matter of consideration. *Ennis v. McLaggan*, 608 S.W.2d 557 (Mo.App. 1980).

## B.

■ The first possible basis upon which to claim consideration would be the husband's promise to pay $4,500. That must be considered, however, in the light of the fact that the wife was claiming $7,800 in past due child support. Nowhere in his petition does the husband deny that he was delinquent in the amount of $7,800. An agreement on his part to pay the partial sum of $4,500 out of a total undisputed amount due of $7,800 cannot be acceptable consideration. *Kennedy v. Kennedy, supra.*

■ Nor can the husband's promise to pay $100 child support on and after February 1, 1981, be accepted as legal consideration. The husband was already under a continuing obligation to pay $200 per month. Even though one of the children may have become emancipated, that did not automatically result in a reduction of the $200 figure. The law in this state is clear that when support is awarded for more than one child in a single lump sum for all of them, the same total amount continues for the remaining child or children even after the emancipation of any one of the children, until reduction of that amount by court order. *Gordon v. Ary*, 358 S.W.2d 81

inadequate as a basis for decision, the judgment must be affirmed if the result reached was correct on any tenable basis. *Stitt v. Stitt*, 617 S.W.2d 645 (Mo.App.1981); *Wilson v. City of Waynesville*, 615 S.W.2d 640 (Mo.App.1981).

(Mo.App.1962); *Meyer v. Meyer*, 493 S.W.2d 42 (Mo.App.1973); *Lusk v. Lusk*, 537 S.W.2d 874 (Mo.App.1976); *Parsley v. Parsley*, 563 S.W.2d 146 (Mo.App.1978); *Vincent v. Vincent*, 584 S.W.2d 152 (Mo.App.1979). Furthermore, the reduction of child support is not a valid subject of contract between the parents. *Kennedy v. Kennedy, supra.*

The only remaining basis upon which the requirement of consideration might possibly be satisfied would have to rest upon the allegations of paragraph 8 of the petition, in which the husband alleged that he had borrowed money for his general business purposes and in reliance upon the wife's promises had deposited the borrowed sum in Third National Bank. Those allegations seem to represent an effort on the part of the husband to bring himself within the theory of promissory estoppel, set forth in Restatement (Second) of Contracts Section 90 (1981). That doctrine, which permits a promise without consideration to be enforced if the elements of estoppel are present, has been adopted in this state. *In re Jamison's Estate*, 202 S.W.2d 879 (Mo. 1947); *Feinberg v. Pfeiffer Company*, 322 S.W.2d 163 (Mo.App.1959); *Coffman Industries, Inc. v. Gorman-Tabor Co.*, 521 S.W.2d 763 (Mo.App.1975); *Katz v. Danny Dare, Inc.*, 610 S.W.2d 121 (Mo.App.1981); *Kennedy v. Kennedy, supra.*

However, such a promise will be enforced only where the promissor should have expected or reasonably foreseen the action which the promisee claims to have taken in reliance upon the promise. Thus, Comment b to Section 90 of the Restatement (Second) of Contracts states: "The promissor is affected only by reliance which he does or should foresee...." Henderson, *Promissory Estoppel and Traditional Contract Doctrine*, 78 Yale L.J. 343, 346 (1969), puts the matter this way: "In short, Section 90 states the proposition that, in situations where traditional consideration is lacking, reliance which is *foreseeable*, reasonable, and serious will require enforcement if injustice cannot otherwise be avoided." (Emphasis added). In all of the Missouri cases involving the application of promissory estoppel, the facts clearly showed that the promisor should have and

in fact clearly did foresee the precise action which the promisee took in reliance. Thus in *Coffman Industries, Inc. v. Gorman-Tabor Co., supra*, the opinion states: "Fidelity should reasonably have expected that its promise of payment would induce the change of position by Gorman-Tabor." And in *Katz v. Danny Dare, Inc., supra*, the opinion states: "It is conceded Dare intended that Katz rely on its promise of a pension...."

In the present case the nature of the situation would not impel a reasonable expectation by the wife that the oral agreement allegedly made by her would lead the husband to borrow money for his business and deposit it in Third National Bank. Nor does the husband's petition allege any special facts which would support a conclusion that the wife expected or should have foreseen such borrowing and deposit by the husband. Accordingly, the present case is not within the doctrine of promissory estoppel.

The husband has not carried the burden of pleading consideration for the alleged contract of settlement. The trial court therefore properly sustained the motion to dismiss.

Affirmed.

All concur.